In the Matter of the Application of AMANDA APPELL, Individually and as Executrix, etc., of JACOB APPELL, Deceased, and Others, to Revoke Letters Testamentary Issued to ALBERT J. APPELL, as Executor, etc., of JACOB APPELL, Deceased, and to Remove Him as One of the Trustees Thereunder.

In the Matter of the Judicial Settlement of the Account of Proceedings of ALBERT J. APPELL, as One of the Executors, etc., of JACOB APPELL, Deceased, and the Resignation of ALBERT J. APPELL.

AMANDA APPELL EVANS (Formerly AMANDA APPELL), Individually and as Executrix, etc., of JACOB APPELL, Deceased, and ROBERT W. APPELL, Appellants; ALBERT J. APPELL, Individually and as Executor, etc., of JACOB APPELL, Deceased, and Others, Respondents. (No. 1.)

First Department, January 13, 1922.

**Executors and administrators — one of two executors not removed for misconduct where it is impossible to determine which is more at fault — appeal — when entire record brought before appellate court.**

Where a testator, leaving a large estate, appointed a son and a daughter executors and trustees and the two were in continual disagreement in regard to handling the estate to such an extent that property of the estate was wasted, but an examination of the evidence fails to disclose which one of the executors is the more blameworthy, a decree of the Surrogate's Court refusing to remove the son as executor and denying his application to resign will be affirmed on appeal, where it also appears that the widow of the testator and three other children joined the daughter in the petition for the son's removal but that the said daughter is the only one who appealed from the decree of the Surrogate's Court.

If a referee appointed by a Surrogate's Court to take proof but not to hear and determine makes findings, the findings, so far as adopted, become the findings of the surrogate and an appeal from a decree of the Surrogate's Court brings up the entire record.

APPEAL by Amanda Appell Evans, individually and as executrix, and another, from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said Surrogate's Court on the 7th day of August, 1920, except in so far as it denies the application of Albert J. Appell to resign as executor under the will of Jacob Appell, deceased.

*Gustave Lange, Jr.*, for the appellants.

*Albert J. Appell*, attorney, in person [*Francis M. Scott* of counsel; *Charles A. Flammer* with him on the brief], for the respondent Albert J. Appell.

*Blauvelt & Warren* [*George A. Blauvelt* of counsel; *Joseph A. Warren* with him on the brief], for the respondents Anna T. Appell and Matilda Appell.

PAGE, J.:

Jacob Appell died December 26, 1915, leaving a widow and six adult children, two of whom, Emelia A. Sauer and Albert J. Appell, were children of a former marriage. By his will he bequeathed and devised all the residue of his estate after the payment of his debts to his son Albert and his youngest daughter Amanda in trust:

(I) To pay an annuity of $800 to his widow and to each of his children, the share of any deceased child to be paid to its issue *per stirpes* and not *per capita;*

(II) To accumulate the income to pay off and discharge mortgages and other incumbrances upon his real estate or to be used in the improvement of such property;

(III) After the mortgages had been fully paid out of the balance of the income, then the whole of the net income was to be divided equally among his wife and all his children, share and share alike, as provided in the first subdivision of this clause;

(IV) To divide the corpus of the estate, when the youngest child living at the time of his death should arrive at the age of forty-five years, equally among all his children, share and share alike, the issue of a deceased child to take *per stirpes*

and not *per capita;* if his wife be living, $3,000 annually to be paid to her by his children.

He appointed Albert J. Appell and Amanda Appell the executors and trustees under the will, giving to the survivor power to fill the vacancy on the failure to qualify, death, incapacity or resignation of the other.

The testator left an estate consisting principally of real estate in the borough of Manhattan, valued at approximately $800,000. The widow elected to claim her dower and to reject the provisions of the will.

The testator had maintained an office in West Twenty-third street, in which his son Albert also had a desk as an adjunct to his down-town law office. Amanda had worked in this office for her father for fourteen years, and another sister for twenty-four years. Dissensions almost immediately arose between Albert and Amanda over his attempted discharge of a rent collector and a carpenter, both of whom had been in his father's employ many years. The relations became so strained that the executors would not speak to each other, but communicated in writing, although both were present in the same office.

In April, 1916, Albert J. Appell, individually, commenced an action for the partition of the real estate, upon the ground that the trust was void, in that the particular estate was limited upon years and not upon life, and that the direction to accumulate income for the purpose of paying mortgages was void. Upon appeal, this court held that the words " if living " should be read into the provision for the trust to terminate on the youngest daughter arriving at the age of forty-five years, and hence that the trust was valid. We also held that the provision for the accumulation of income to pay mortgages was void, but that the provision could be eliminated without wholly defeating the testator's intention, and affirmed the order for judgment on the pleadings dismissing the complaint. (*Appell* v. *Appell,* 177 App. Div. 570; affd., 221 N. Y. 602.)

It is now claimed that this action was brought for the purpose of obtaining a construction of the will. Such a construction could have been obtained in an action or proceeding brought for that purpose by the executor, and thus he would have avoided the criticism of seeking his own benefit in hostility to the estate of which he was trustee.

The unfortunate differences of the trustees over minor matters of administration of the estate finally reached the stage where there was danger of property of the estate being sold under judgments of foreclosure, and actions being brought to recover debts of the estate, although there were ample funds in the bank to meet the installment payments of principal and pay debts.   This will be more fully dealt with later. Amanda insisted on a lawyer being retained as adviser of the estate, although Albert had offered to do any legal work without charge.   He stated to Amanda that he was willing to consent to the employment of any reputable attorney, except Gustav Lange, Jr., and would abide by his advice.   Thereupon Amanda immediately employed Lange.   In August, 1916, Amanda as executrix began an action against Albert to recover $9,500, with interest, upon certain promissory notes.   In that action Albert admitted the indebtedness and set up a counterclaim for $36,000 for services rendered to his father in his lifetime in the management of his property.   The action was stayed pending the determination of the proceedings in the Surrogate's Court hereinafter mentioned.

Although Albert and Amanda had agreed in January, 1916, that all moneys of the estate should be deposited to the joint account of both of said parties to be drawn on only by the signature of both, as executrix and executor, on the 20th day of September, 1916, Amanda, without the knowledge or consent of Albert, opened an account with the moneys of the estate in the Astor Trust Company.   On November 15, 1916, with the consent of each of the children of the decedent and the widow, Albert withdrew from the management of the estate as executor, in the expectation and understanding that such withdrawal would aid the parties in arriving at a settlement of their differences, and since said date all the property and funds of the estate have been under the control of the executrix.   On October 16, 1916, Amanda Appell, individually and as executrix and trustee, the widow and her three children, filed a petition in the office of the clerk of the Surrogate's Court of New York county for the revocation of Albert's letters testamentary and for his removal as one of the trustees. Albert J. Appell filed his answer, and a replying affidavit

of Amanda Appell was presented, and on November 10, 1916, Lemuel Ely Quigg was appointed a referee to take the proofs and report the evidence with his findings.   On May 3, 1917, Albert J. Appell filed a petition praying that he be allowed to resign as executor of the will of Jacob Appell, and for a settlement of his account.   Objections to the account were filed. On the 26th day of May, 1917, Albert J. Appell filed a petition for a compulsory accounting by himself and Amanda as executor and executrix, and a decree was made in accordance with the prayer.   Thereupon Albert filed substantially the account presented by him on May 3, 1917.   On November 23, 1917, an order was entered in the Surrogate's Court consolidating these three proceedings and referring them to the same referee.

Thereafter, on December 3, 1917, Amanda Appell filed her account and a petition that she be allowed to voluntarily account.   On January 2, 1918, the order of November 23, 1917, was amended by striking therefrom the matter of the compulsory accounting of Amanda Appell and consolidating it with the voluntary proceedings and referring all the matters to Mr. Quigg as referee.   The fact that all these proceedings were before the same referee and his method of handling the matters has led to considerable confusion in the record, as he filed identical reports in the proceedings, changing only the headings.   The referee died shortly after the filing of his reports.   The surrogate, in confirming the reports, has segregated the findings, so that, so far as the findings are concerned there is now no confusion.   The record, however, is much longer than it should have been.

The references in the proceedings for the removal of the executor and on his application to resign were not to hear and determine; therefore, the findings, so far as adopted became the findings of the surrogate, and, under the former practice, exceptions should have been filed to his findings.   (*Matter of Yetter*, 44 App. Div. 404, 406; affd., 162 N. Y. 615.)   As it is now not necessary for the surrogate to make findings (Code Civ. Proc. § 2541), appeal from the decree brings the entire record before us.   An examination of the objections made to the conduct of Mr. Appell and the evidence adduced convince me that the 55th and 59th findings of the referee are well founded:

" That Albert has at no time wasted the assets of the

estate of the decedent, nor has he been guilty of misconduct in his office, and that any loss or damage which has resulted to the estate has been due solely to the failure of the executor and executrix to agree as to the management and details of management thereof and to the differences of their counsel as to the legal rights and liabilities of said executor and executrix. That the waste and injury to the estate has resulted from the inability of the executor and executrix to agree and not from any intentional waste or improvidence on the part of either. That it is impossible to find from the evidence that one is more greatly to blame than the other, and that no proof has been adduced from which I can determine that one rather than the other should be removed as executor and trustee."

It is most unfortunate for the estate that the executors cannot agree, and that the assets of the estate are being wasted by reason of their litigious differences. If this condition continues, it will probably be necessary to remove both.

The criticism of Albert, which at first impression would appear to be well founded, was his refusal to sign checks to pay off installments demanded on the principal sum of some of the mortgages, or consent to the sale of securities to realize a sufficient sum for that purpose. Notice of the demand for those installments had been given to the testator in his lifetime, although they did not mature until after his death. They were debts of the testator, as were the claims of creditors for which demands were made. They were payable, therefore, out of the principal of the estate, and not from income. The widow had elected to insist on her dower rights and not to accept the provision of the will in lieu thereof. She refused to sign a consent either to the payment being made out of income or by the sale of securities. All others were willing to consent, and Albert refused to sign unless the widow also signed. He was justified in not assuming the risk of the widow later insisting that her share of the principal should not be applied to repay the advances made out of the income. We must bear in mind that at this time Mr. Lange was counsel for the widow and all of her children, and was hostile to Albert.

Another persuasive feature of the case is that while the petition for Albert's removal was made jointly by Amanda

individually and as executrix, and the widow and her children, thereafter other counsel were substituted for the widow and her other three children, and this appeal is prosecuted by Amanda alone, the widow and her three children joining with Albert and his sister in asking an affirmance of the decree.

The decree should be affirmed, the order to be settled on notice, at which time the allowance of costs will be considered.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Decree affirmed.   Settle order on notice, at which time the allowance of costs will be considered.